IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

SABRI BENKAHLA,            )
                          )
        Petitioner,        )          1:06cr9 (JCC)
                          )          1:10cv30
            v.             )
                          )
UNITED STATES OF AMERICA,   )
                          )
        Respondent.        )


**M E M O R A N D U M   O P I N I O N**

This case is before the Court on Petitioner's Motion
pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside his
Conviction, or Correct his Sentence (the "Petition").  For the
reasons stated below, the Petition is denied.

## I.    Background

The facts of the case of Sabri Benkahla ("Benkahla" or
"Petitioner") are familiar to this Court, and what follows
offers only a brief recital of the relevant facts here.[1]  Between
1999 and 2003, Benkahla associated with a group of young Muslim
men who followed the teachings of lecturer Ali Timimi ("Timimi")
at the Dar Al-Arqam Islamic Center in Falls Church, Virginia
("Dar Al-Arqam").  Timimi regularly espoused the importance of
engaging in violent jihad against the enemies of Islam.

---

[1] For a review of the factual background, please see this Court's Memorandum
Opinion ("Mem. Op.") of July 24, 2007 [Dkt. 144] and *United States v.
Benkahla*, 530 F.3d 300, 303 (4th Cir. 2008).

Between at least 1999 and 2002, a terrorist group
known as Lashkar-e-Taiba ("LET") provided free jihad training to
Muslim men from around the world at camps in Pakistan and
Afghanistan.  LET advertised its beliefs on the internet and in
its newsletter and openly espoused hatred for the United States
and called for jihad worldwide.  (*See* GX 1D27, 1D28, 1D29, 1D45,
1D46, 1D48, 1D52.)[2]  Between 2000 and 2002, at least seven
associates of Benkahla and Timimi at Dar Al-Arqam, other than
Benkahla, trained overseas with LET.  *See United States v. Khan*,
461 F.3d 477 (4th Cir. 2006).  These associates included Ibrahim
al-Hamdi and Yong Kwon, who were both close friends with
Benkahla.

Benkahla was acquitted in 2004 on charges relating to
attending a jihad camp in Afghanistan because the Government was
unable to prove the location of the camp.  *See Benkahla,* 530
F.3d at 304.  He was awarded statutory immunity and ordered to
testify before the grand jury.  *Id.*  Petitioner agreed to answer
questions posed by investigators outside the grand jury under
the same protections and conditions that he answered questions
inside the grand jury.  *Id.*

Before investigators and in grand jury testimony in
2004, Benkahla denied attending any jihad camp in the summer of
1999 and denied using any weapons in connection with such a

---

[2] "GX" refers to the government exhibit filed at trial with the specified
number.  "DX" refers to the defendant exhibit filed at trial.  "Tr." refers
to the page of the transcript of the trial.

trip. *Id.* Further, he denied recollection of any specifics about suspicious individuals with whom he had traveled or visited, including Manaf Kasmuri and Ibrahim Buisir. *Id.* He also denied that he had corresponded about jihad training. (GX 9D1, 9D2.)

In 2006, Benkahla was indicted for perjury, obstruction of justice, and for making false statements for his statements and testimony in 2004. After a four-day trial, he was convicted on all counts. The jury found that Benkahla testified falsely, obstructed justice, and provided false answers to the FBI about whether he participated in a jihad training camp in 1999, who facilitated his attendance at that camp, who else attended such camps, and with whom he corresponded about jihad training and related matters. *Id.* at 305.

During trial, the Government offered the expert testimony of Evan Kohlmann ("Kohlmann") regarding the Taliban's control of Afghanistan and the prevalence of terrorist training camps there and of Special Agent ("SA") Sarah Linden ("Linden"). (*See* Pet. at 12-17.) Benkahla's trial counsel, John Keats ("Keats"), did not object to Kohlmann's expert qualifications. Keats did not concede that Benkahla's contested grand jury statements were "material" under the definition of the perjury statute. *See* 18 U.S.C. § 1001. Keats also chose not to object to the showing of the video "Destruction of the USS Cole;"

however, he did object, and was sustained, twice during the playing of the video, which ultimately led to the termination of the video. (Tr. at 125-126.) Further, Keats did not object to SA Linden's testimony regarding a video titled "Russian Hell 2000." (GX 3A8.) This Court granted Keats's motion on behalf of Benkahla to suppress the playing of "Russian Hell 2000" (Mem. Op., Oct. 2, 2006 at 13); however, the existence of the video was not suppressed, as it was repeatedly referenced in Benkahla's electronic files. (*See* Mem. Op. at 13; GX9H55.)

Benkahla's Petition also alleges that a juror entered the courtroom during a pre-trial evidentiary ruling on January 29, 2007, and that Benkahla informed Keats of this at the time. (Pet. at 44.) Keats himself denies that this event occurred. (*See* Gov't Opposition to Pet. ("Opp.") at 23-24.) On January 20, 2010, Keats addressed this issue in an email that was also sent to Jonathan Sheldon (Benkahla's present counsel):

> As I indicated to you on January 14th, I have no recollection of the event described by Sabri in his petition. I cannot think that I would have disregarded it if it did happen and I was made aware of it. It is also possible that something was said to me and we were immediately satisfied that the person was not a juror in which case it left no impression on me.

(Opp. at 23-24.) Furthermore, near the end of the January 29, 2007 hearing, the Court indicated that it wished to spend more time considering whether a number of exhibits would be admissible. At that time, the Court stated: "Let me think about

it for a moment. [Courtroom Security Officer] Cooper, just hold the jury. Just let me know if they're all here. Let me come back. I'll take a brief recess." (Tr. 20.) The record shows that a brief recess was taken and then additional evidentiary arguments were made by counsel, but there was no indication that any of the jurors were missing. Thus, for Benkahla's allegation about the juror to be correct, one of those jurors had to have left the jury room, circled around to the courtroom's public entrance and then joined the audience in the courtroom without the Court, the attorneys, the law clerks, or the Courtroom Security Officer noting his entrance. The next time that the jury is mentioned in the trial record is approximately four pages later when the following exchange takes place:

> The Court: Okay. I have to swear the jury.
> Mr. Keats: Judge, before you do, first of all, I'm going to ask for a rule on witnesses.
> The Court: I can't hear you, sir.
> Mr. Keats: I'm going to ask for the rule on witnesses.
> The Court: I'll grant it. I'll do it when the jury comes in.

(Tr. 24.) The Court then proceeded to swear the jury and invoked the rule on witnesses and then asked the witnesses to stand and leave the courtroom. (Tr. 29-30.) Neither the Court, nor the trial counsel, nor the Courtroom security officer, nor a single member of the jury indicated that a juror was in the courtroom during the evidentiary hearings.

At sentencing, this Court found that, for purposes of application of the United States Sentencing Guidelines

("U.S.S.G.") § 3A1.4 App. n. 2 (the so-called "terrorism"
enhancement), Benkahla's false and misleading answers obstructed
an investigation of a federal crime of terrorism.  This Court
calculated Benkahla's guideline range at 210 - 270 months in
prison, but then imposed a variance by reducing his Criminal
History Category from VI to I, which resulted in a sentence of
121 months in prison.  Benkahla timely appealed. *Benkahla*, 530
F.3d at 305.  The Fourth Circuit affirmed his convictions and
sentence. *Id*. at 303.  At trial, Benkahla was represented by
retained counsel Keats.  At sentencing and on direct appeal, he
was primarily represented by retained counsel Jonathan Shapiro
("Shapiro") and William Moffitt ("Moffitt"), respectively.

On January 11, 2010, Petitioner moved, pursuant to 28
U.S.C. § 2255, to Vacate, Set Aside his Conviction, or Correct
his Sentence, arguing that (1) he was provided ineffective
assistance of trial and appellate counsel; (2) that a juror was
exposed to pre-trial evidentiary rulings; and (3) that the
Government violated its duty under *Brady v. Maryland*, 373 U.S.
83 (1963) to provide Benkahla with exculpatory information.
[Dkt. 172.]  The Government has opposed.  [Dkt. 180.]  Benkahla,
again through counsel, filed a response.  [Dkt. 181.]  The
Petition is before the Court.

## II.  Standard of Review

Under 28 U.S.C. § 2255, a prisoner in federal custody
may attack his sentence on four grounds: (1) the sentence was

imposed in violation of the Constitution or the laws of the
United States; (2) the court was without jurisdiction to impose
the sentence; (3) the sentence was in excess of the maximum
authorized by law; or (4) the sentence is otherwise subject to
collateral attack.  28 U.S.C. § 2255; *see also Hill v. United
States*, 368 U.S. 424, 426-27 (1962).  To prevail on a § 2255
Motion, the petitioner bears the burden of proof by a
preponderance of the evidence.  *Miller v. United States*, 261
F.2d 546, 547 (4th Cir. 1958).

### III. Analysis

A.   <u>Ineffective Assistance of Counsel</u>

Benkahla makes numerous claims of ineffective
assistance of trial counsel, and one claim of ineffective
assistance of appellate counsel.  To succeed on a claim for
ineffective assistance of counsel under the Sixth Amendment, a
petitioner must satisfy the two-pronged test established by the
Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687
(1984). S*ee also United States v. Breckenridge*, 93 F.3d 132, 136
(4th Cir. 1996); *Smith v. South Carolina*, 882 F.2d 895, 898 (4th
Cir. 1989).  Under the *Strickland* test, a petitioner must show
that: (1) counsel's representation fell short of an objective
standard of reasonableness; and (2) there is a reasonable
probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different.  *Strickland,*

466 U.S. at 687-94. The Fourth Circuit has labeled these two elements of the *Strickland* test as the "performance prong" and the "prejudice prong." *See Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992). If a petitioner fails to meet either requirement, his claim for ineffective assistance of counsel fails. *Strickland,* 466 U.S. at 700. Because "[t]he defendant bears the burden of proving *Strickland* prejudice," if a defendant fails to meet this burden, "a reviewing court need not consider the performance prong." *Fields*, 956 F.2d at 1297, *accord Strickland*, 466 U.S. at 697. The Court will address each of Petitioner's ineffective assistance of counsel claims in turn.

> i. *Failure to Object to the Expert Qualifications of*
> *Evan Kohlmann on the subject of the LET*

Benkahla argues that his trial counsel, Keats, "should have objected to Kohlmann's expertise as to the facts at issue in this trial." (Pet. at 21.) Specifically, Benkahla argues that Kohlmann was not a qualified expert under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), as the Government's notice regarding his testimony did not mention any knowledge of LET. (Pet. at 20; Reply at 4-5.) The Government argues that the Fourth Circuit has already ruled on Kohlmann's qualifications, finding that they were "obviously substantial" and that "the district court acted well within its discretion in

determining that they were sufficient." (Opp. at 6 (citing *Benkahla*, 530 F.3d at 309 n.2).) Benkahla attempts to distinguish that ruling by arguing that, because of Keats's failure to object to Kohlmann's qualifications, the Fourth Circuit was examining whether this Court abused its discretion by "failing to *sua sponte* 'police' Kohlmann's testimony." (Reply at 4.)

In evaluating an ineffectiveness claim, a court must hold a "strong presumption that conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. In short, Benkahla must overcome the presumption that, under the circumstances, the actions he challenges now "might be considered sound trial strategy." *Id*; *see United States v. Terry*, 366 F.3d 312, 316-18 (4th Cir. 2004). An attorney's decision to object or not to object to certain items in the course of a jury trial is precisely "the type of act for which *Strickland* requires that judicial scrutiny be highly deferential." *Green v. Lynaugh*, 868 F.2d 176, 178 (5th Cir. 1989). The attorney's decision not to object constitutes a conscious, tactical choice between two viable alternatives. *Carter v. Holt*, 817 F.2d 699, 701 (11th Cir. 1987); *see also United States v. Ortiz Oliveras*, 717 F.2d 1, 3 (1st Cir. 1983) ("[T]actical decisions, whether wise or unwise, successful or

unsuccessful, cannot ordinarily form the basis of a claim of ineffective assistance").

Here, regardless of the standard of review, the Fourth Circuit Court held, as did this Court, that Kohlmann's qualifications to testify on the issues he did were "obviously substantial." *Benkahla,* 530 F.3d at 309 n.2; (Tr. 90-91). Keats's decision not to object to Kohlmann's expert qualifications, particularly in light of the fact that Kohlmann already had been qualified as an expert witness in terrorism matters at least five times in the United States, including by Judge Brinkema in Benkahla's first trial, was not unreasonable nor did that decision result in actual prejudice constituting ineffective assistance of counsel.[3] *See Strickland,* 466 U.S. at 700; (Tr. 90-91).

ii. *Failure to Concede to the Element of "Materiality" under the Perjury Statute*

Benkahla argues that his trial counsel was ineffective because he did not simply stipulate to the element of "materiality" on the charge of perjury. (Pet. at 22.) A defendant is guilty of grand jury perjury when the government proves: (1) that the defendant gave false testimony to the grand

_____

[3] Benkahla argues that the case of *United States v. Amawi*, 541 F. Supp. 2d 945 (N.D. Ohio 2008) should be persuasive here. In *Amawi*, a case decided *after* the Petitioner was tried here, Kohlmann's expert testimony was rejected by the district court judge. *Id.* at 950-952. The District Court of Ohio's ruling on a separate basis in a separate case does not trump the Fourth Circuit's ruling on Kohlmann's qualifications.

jury under oath; (2) that the testimony was false; (3) that the false testimony was given knowingly; and (4) that the subject matter of the testimony was material to the grand jury's investigation. *United States v. Sarihifard*, 155 F.3d 301, 306 (4th Cir. 1998). In Benkhala's view, by stipulating to this fourth element, he would have been able to keep Kohlmann and SA Linden off of the witness stand, thus eliminating a great deal of what he calls "prejudicial" testimony from these witnesses.[4]

Petitioner's argument, however, can only be premised on the theory that the Government is required to agree to a stipulation of materiality. The case on which Petitioner relies is *United States v. Old Chief*, 519 U.S. 172 (1997), which found that a district court abused its discretion in rejecting defendant's stipulation to a prior offense when charged with being a felon in possession of a firearm. *Id.* In *Old Chief* the Court stated:

> In sum, the accepted rule that the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away rests on good sense. A syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it. People who hear a story interrupted by gaps of

---

[4] The Petitioner harps on the nature of Kohlmann's and Linden's testimony in both his Petition and his Reply. (*See* Pet. at 29-36; Reply at 6-7 ("Benkhala's trial was focused on precisely those inadmissible things").) The Fourth Circuit has already rejected Petitioner's appeal on that score and found that "[t]he trial judge managed the proceedings in this case with care and skill, and we see no abuse of discretion in the testimony and exhibits admitted." *See Benkahla,* 530 F.3d at 308-310. This Court will analyze Petitioner's current claim of ineffective assistance, taking into account that none of the testimony admitted at trial was unduly prejudicial.

> abstraction may be puzzled at the missing chapters,
> and jurors asked to rest a momentous decision on the
> story's truth can feel put upon at being asked to take
> responsibility knowing that more could be said than
> they have heard.  A convincing tale can be told with
> economy, but when economy becomes a break in the
> natural sequence of narrative evidence, an assurance
> that the missing link is really there is never more
> than second best.

*Id.* at 189.  The exception to this rule recognized in *Old Chief*

was specifically limited to defendant's legal status.  *Id.* at

190.  The Supreme Court concluded that the defense may require

the Government to stipulate to a prior conviction, but "the

prosecutor's choice will generally survive a Rule 403 analysis

when a defendant seeks to force the substitution of an admission

for evidence creating a coherent narrative of his thoughts and

actions in perpetrating the offense for which he is being

tried."  *Id*. at 191-92.  Here there is no reason to believe

that, had Keats offered to stipulate to the "materiality" of

Petitioner's statements, the Government would have accepted such

a stipulation.  Petitioner cannot show, by a preponderance of

the evidence, that the lack of stipulation as to "materiality"

that there is a reasonable probability that, had such a

stipulation been made and accepted, the result of the trial

would have been different thereby failing the "prejudice" prong

of *Strickland*.  *See Strickland*, 466 U.S. at 700.  Furthermore,

it was not objectively unreasonable for Keats to contest the materiality element as part of a zealous defense strategy.[5]

### iii. *Failure to Object to the USS Cole Video*

Benkahla next argues that Keats's failure to object to the playing of the USS Cole video and failure to move for mistrial or a limiting instruction constituted ineffective assistance of counsel. (Pet. at 36.) An attorney's decision to object or not to object to certain items in the course of a jury trial is a classic example of a strategic trial judgment, "the type of act for which *Strickland* requires that judicial scrutiny be highly deferential." *Green*, 868 F.2d at 178. With regards to the USS Cole video, Keats in fact objected twice after the video began -- once to images of Osama Bin Laden, and once to images of the Kenya embassy bombings. Both times the Court sustained the objections. (Tr. 125-126.) After the second objection, the Government ended the playing of the video. It was a short video played during the course of a four-day trial, and Keats objected to the video when he found it objectionable and was sustained. Keats was an attentive attorney and clearly did not hesitate to object where he felt it was warranted. He

---

[5] The Court notes that many of the Petitioner's arguments at trial were premised on the lack of "materiality" of his statements to the Grand Jury. (*See* Tr. 21, 73-74, 76-77, 994-995, 999-1000, 1014.) For example, at closing, defense counsel argued that "[t]he Government tells you that most of the evidence we heard here has to do with materiality . . . If you go through [the] 89 materiality exhibits, I submit to you that you will find approximately six that mention Sabri Benkahla, six." (Tr. at 1014.) Although Keats's trial strategy of contesting materiality proved unsuccessful, it was not unreasonable.

objected to and moved to exclude numerous exhibits during the trial. (*See e.g.*, Tr. 47-49, 57, 80-81, 127, 131, 146, 156, 172-175, and 187.) A defendant "is entitled to a fair trial, but not a perfect one, for there are no perfect trials." *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 553 (1984). Petitioner cannot now show that Keats provided ineffective assistance of counsel based on his failure to object to a piece of evidence, when he objected to parts of the evidence twice and ultimately succeeded in efforts to halt its presentation. Keats's conduct with regard to the USS Cole video was objectively reasonable and Petitioner has not shown that there is a reasonable probability that the outcome of his trial would have been different had Keats acted otherwise.

> iv. *Failure of Trial Counsel to Object to Testimony Regarding the Russian Hell 2000 Video*

Benkahla also claims that Keats should have objected to SA Linden's testimony about the Russian Hell 2000 video, Government Exhibit 3A8. (Pet. at 39.) This Court granted the motion by Keats to keep the video itself out of evidence because viewing the particular scenes within it risked prejudice that outweighed its probative value; however, the existence of the video was not suppressed, as the video was referenced in an email from Benkahla to a government witness, Yong Kwon, and retained by Benkahla. (Mem. Op., October 2, 2006, at 13; GX

9H55.)  The contested testimony consists of seven lines spoken

by SA Linden describing what the video was.  (Tr. at 301.)

Keats's conduct in moving to exclude the video but failing to

object to testimony describing the admittedly relevant existence

of the video is objectively reasonable.

Furthermore, even if this Court were to determine that

Keats's conduct in this regard was unreasonable, the failure to

object did not cause sufficient prejudice to support an

ineffective assistance of counsel claim.  The jury in this case

answered 21 special verdicts with respect to the various

statements and obstructions alleged in the four counts against

Petitioner.  The jurors found that Benkahla neither obstructed

the grand jury nor committed perjury by testifying that he

traveled with an individual to Pakistan as a result of such

individual's offer to him to show him around.  In other words,

they found that his testimony was neither evasive (for purposes

of the obstruction charged in Count 3), nor false (for purposes

of the perjury charged in Count 2).  Given the Jury's close

parsing of the record and the verdict, Benkahla cannot establish

that an objection to seven lines of SA Linden's testimony would

have a reasonable probability of changing the outcome of the

trial.  He cannot establish the "prejudice" prong of the

*Strickland* test.

v.  *Ineffective Assistance During Sentencing*

Benkahla next claims that Keats and his post-trial counsel, Shapiro, were ineffective for failing to apprise this Court of "relevant cases that demonstrated a sentencing disparity." (Pet. at 47.)  Petitioner argues that, although his sentencing memorandum dealt with the sentences of his previous co-defendants, it "never discussed cases outside of that small sample." (Pet. at 47.)  In support of this allegation, Petitioner offers ten cases where defendants were awarded lighter sentences.  (Pet. at 48-50.)

Petitioner's Sentencing Guideline range was reached after this Court imposed (and the Fourth Circuit ultimately upheld) the "terrorism enhancement" found in Application note 2 to U.S.S.G. § 3A1.4.  *See Benkahla*, 520 F.3d at 311-313.  After finding a range of 210 – 270 months, this Court saw fit to impose a variance, cutting Petitioner's sentence in half.  *See id.*  Significantly, the *only* case cited by Petitioner where the terrorism enhancement was imposed was one that occurred four months *after* Benkahla was sentenced.  (See Pet. at 50 (citing "*United States v. Marzook*, 1:03-cr-978 (N.D. Ill.)").)  In his Reply, Petitioner acknowledges his error and argues that a separate defendant in that case, a Mr. Salah, was sentenced to less time than Benkahla for similar conduct.  (Reply at 19.)

After reviewing the cases cited by Petitioner, it is clear that not one of those cases is sufficiently analogous to the case at bar for any omission by defense counsel to constitute ineffective assistance. Given that Petitioner's attorneys raised the sentences of his former co-defendants during the sentencing phase, they were not objectively unreasonable for failing to raise cases that presented differing facts, in other jurisdictions, where the terrorism enhancement was not imposed. *See, e.g., United States v. Abu Ali,* 528 F.3d 210, 264 (4th Cir. 2008) (holding that cases with dramatic differences cannot serve as the basis for useful comparison, and that such comparisons "would be tantamount to comparing the incomparable"). Furthermore, even assuming counsel acted unreasonably, counsel's failure to bring these cases to the Court's attention would not have resulted in a different outcome, as Benkahla's sentence would not have changed given that this Court already granted an approximately 50% variance from the recommended guideline range.

> vi. *Failure of Appellate Counsel to Appeal this Court's Ruling on Limiting the Cross-Examination of SA Tracy Kneisler*

Finally, Benkahla claims that Moffitt was ineffective for failing to raise on appeal the fact that Keats was prevented at trial from impeaching SA Tracy Kneisler (Kneisler") on the grounds of her purported bias against Benkahla. (Pet. at 52.)

In deciding which issues to raise on appeal, an attorney "is entitled to a presumption that he decided which issues were most likely to afford relief on appeal. A decision with respect to an appeal is entitled to the same presumption that protects sound trial strategy." *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993). Here, Moffitt chose three issues to raise in his fifty-five page opening brief: (1) double jeopardy, (2) improper admission of expert testimony, and (3) the application of the terrorism enhancement. The "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (internal quotation marks omitted). The standard is not what a later attorney believes should have been included in the earlier appeal, but instead whether counsel at the time acted within the liberal bounds of competent representation. *Burket v. Angelone*, 208 F.3d 172, 190 (4th Cir. 2000). Given that the standard on appeal for reviewing this Court's ruling on cross-examination is deferential, it was objectively reasonable for Moffitt to set this issue aside, so as to focus on more weighty and promising matters. This Court gave a complete explanation as to why it was not allowing defense counsel to impeach SA Kneisler, and it was highly unlikely that the Fourth Circuit could have found an abuse of discretion on appeal. (*See*

Tr. 14-18.)  Again, Petitioner's counsel acted in an objectively
reasonable manner, and Petitioner cannot establish that had he
acted differently there was a reasonable probability that the
outcome would have been different.

        B.   Juror Contamination

        Benkahla next alleges that he is entitled to a new
trial because a juror was exposed to prejudicial information
when he sat in court during a pre-trial evidentiary ruling, and
that Benkahla told this to Keats at the time.  (Pet. at 44.)
Aside from the allegation offered by Benkahla, a convicted
perjurer, there is no evidence that a juror was so exposed.[6]
Keats has disputed Petitioner's account in an email to
Petitioner's current counsel.  (Opp. at 22.)  For Petitioner's
account is implausible.  For it to be accurate, a juror would
have had to leave the jury room without the Courtroom Security
Officer or the other jurors noticing, walk around to the front
entrance to the courtroom and re-enter without any of the
attorneys, clerks, or the Court noticing his presence, observe
the evidentiary hearings and then quickly retreat to the jury
room (again unobserved) and then re-enter with the jury without
being recognized.  In support of this story, Petitioner offers
only his own bare allegation that he told his trial counsel – an

---

[6] In weighing the validity of Petitioner's allegation, this Court also
considers that Petitioner failed to raise this issue through his counsel
Jonathan Shapiro in post-trial motions or before his sentencing in 2007, or
through his counsel William Moffitt before his appeal in 2008.

allegation trial counsel has refuted.  Furthermore, immediately

after Petitioner alleges he told his trial counsel about the

juror, Keats moved the Court to exclude witnesses from the

courtroom.  Keats's silence regarding a juror in the courtroom

at this time corroborates his version of events rather than

Petitioner's.  In any event, Benkahla cannot carry his burden to

establish that an error occurred.  A petitioner bears the burden

of proving his grounds for collateral review of his sentence by

a preponderance of the evidence.  *Jacobs v. United States*, 350

F.2d 571, 574 (4th Cir. 1965); *Hall v. United States*, 30 F.

Supp.2d 883, 889 (E.D. Va. 1998).  Petitioner has not done so

here.

Petitioner also requests that this Court order the

list of juror names turned over to defense counsel so he can

identify any "Asian names" among them as the juror he alleges

was in the courtroom was Asian.  Petitioner then asks this Court

to hold a hearing to which "the likely juror is brought for

brief questioning."  (Reply at 17.)  "In order to obtain an

evidentiary hearing . . . a habeas petitioner must come forward

with some evidence that the claim might have merit."  *Nickerson*

*v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992).  "Evidentiary

hearings on 2255 petitions are the exception, not the norm, and

there is a heavy burden on the petitioner to demonstrate that an

evidentiary hearing is warranted."  *Moreno-Morales v. United*

*States*, 334 F.3d 140, 145 (1st Cir. 2003).  Petitioner has failed to offer any evidence other than his own allegation, that his claim has any merit.  No evidentiary hearing is warranted.

        C.    *Brady* Violation

      Benkahla next argues that the Government failed to provide him with exculpatory evidence, on the grounds that the Government failed to produce to him records that reflected that cooperating witnesses told the Government that they did not know that Benkahla traveled to a training camp.  (Pet. at 50-51.)  A motion for a new trial on grounds of newly-discovered evidence is granted only if (1) the evidence is, in fact, newly discovered; (2) facts are alleged which allow an inference of diligence on defendant's part; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material to the issues involved; and (5) the evidence would probably produce an acquittal at a new trial.  *United States v. Bates*, 813 F.2d 1289, 1295 (4th Cir. 1987).  There is an exception to these requirements for evidence undiscovered because of a *Brady* violation.  *See United States v. Cohn*, 166 F. App'x 4, 7 (4th Cir. 2006).  In such a case, the Defendant would need to demonstrate that the withheld evidence was in fact *Brady/Giglio* material, in which case a new trial may be warranted even if the evidence is merely impeaching and, if presented at a new trial, would create a "*reasonable probability* of a different result."

*Id.* (emphasis added) (citing *Kyles v. Whitley*, 514 U.S. 419, 434 (1995), *United States v. Bagley*, 473 U.S. 667, 676 (1985)).

Here, Petitioner argues "on information and belief" that his original co-defendants Randall Royer and Chwaja Mahmood Hasan both told the FBI that Benkahla had never been to training camps in Pakistan. (Pet. at 50-51.) This argument is supported only by Petitioner's speculation and is rebutted by the Government's letter of March 12, 2006 providing Benkahla's attorney will all of the relevant reports of interviews with the government witnesses, including Randall Royer and Chwaja Mahmood Hansan. (*See* Opp. Ex. A (March 12, 2006 Letter).) Petitioner also argues that the Government's failure to provide him with a copy of a "terrorist training manual" discovered at the home of his acquaintance, Masoud Kahn, constituted a *Brady* violation. (Pet. at 51.) The manual was not an exhibit used during Benkahla's trial, although it was referenced during the testimony of SA Linden.

Neither of Petitioner's allegations meets the criteria for properly stating a *Brady* violation. There is nothing in Petitioner's Motion regarding why statements disclosed to Petitioner pre-trial or the non-exhibit manual were withheld or how the disclosure of such evidence would lead to the "reasonable probability" of a different result. *See Kyles,* 514 U.S. at 434. While Petitioner requests an evidentiary hearing

regarding the statements, in order to obtain an evidentiary hearing, as stated above, "a habeas petitioner must come forward with some evidence that the claim might have merit." *Nickerson,* 971 F.2d at 1136. "Evidentiary hearings on 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted." *Moreno-Morales* at 145 (1st Cir. 2003). Petitioner has not offered sufficient evidence to show that his claim has any merit.

### D. Request for an Evidentiary Hearing

Finally, Benkahla makes a blanket argument that he has "the right to an Evidentiary Hearing" on the claims he brings in his Petition. (Pet. at 53.) As this Court has repeatedly stated *supra*, "[e]videntiary hearings on 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted." *Moreno-Morales* 334 F.3d at 145. "In order to obtain an evidentiary hearing . . . a habeas petitioner must come forward with some evidence that the claim might have merit." *Nickerson*, 971 F.2d at 1136. Petitioner has not offered sufficient evidence to show that his claims might have any merit. Here, the "[M]otion and the files and records of the case conclusively show that the Petitioner is entitled to no relief." *See* 28 U.S.C. § 2255. Accordingly, this Court will

not grant an evidentiary hearing on any of Petitioner's claims.

      E.   <u>Certificate of Appealability</u>

An appeal may not be taken from the final order in a §
2255 proceeding unless a judge issues a certificate of
appealability ("COA").  28 U.S.C. § 2253(c)(1)(B).  A COA will
not issue unless a prisoner makes "a substantial showing of the
denial of a constitutional right."  28 U.S.C. § 2253(c)(2).
This requirement is satisfied only when "reasonable jurists
could debate whether (or, for that matter, agree that) the
petition should have been resolved in a different manner or that
the issues presented were 'adequate to deserve encouragement to
proceed further.'"  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)
(*quoting Barefoot v. Estelle,* 463 U.S. 880, 893 n. 4 (1983));
*see United States v. Gray*, 2010 WL 2593499 (E.D. Va. 2010).
Petitioner has not satisfied this standard.  Accordingly, a
certificate of appealability will not be issued.

## IV. Conclusion

For the foregoing reasons, the Court will deny the
Petitioner's Motion pursuant to 28 U.S.C. § 2255 to Vacate, Set
Aside his Conviction, or Correct his Sentence.

An appropriate Order will issue.


                                 /s/
July 8, 2010                 James C. Cacheris
Alexandria, Virginia     UNITED STATES DISTRICT COURT JUDGE